UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| ALICE SOWDERS, DVM d/b/a FAIRBORN ANIMAL HOSPITAL, individually and as the representative of a class of similarly-situated persons,<br><br>    Plaintiff,<br><br>  v.<br><br>SCRATCH FINANCIAL, INC.<br><br>    Defendant, | Case No. 3:23-cv-56<br><br>Judge Thomas M. Rose<br><br>Magistrate Judge Peter B. Silvain, Jr. |

**ENTRY AND ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, ALTERNATIVELY, TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS (DOC. NO. 7)**

Currently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint or, Alternatively, to Strike Plaintiff's Class Allegations (the "Motion"). (Doc. No. 7.) Plaintiff Alice Sowders, DVM d/b/a Fairborn Animal Hospital ("FAH") filed the instant Complaint (the "Complaint") against Defendant Scratch Financial, Inc. ("Scratch") on behalf of itself and as the representative of a class of similarly-situated persons (the "Putative Class"). (Doc. No. 1.) FAH alleges a single cause of action arising under the "junk fax" provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(C) (the "TCPA"). (*Id.* at PageID 18-24.) In its Motion, Scratch avers that, (a) FAH lacks standing to confer the Court with subject matter jurisdiction in this action, and (b) FAH has failed to state a claim upon which relief may be granted. (Doc. No. 7 at PageID 81.) Alternatively, Scratch requests that the Court strike FAH's class allegations. (*Id.*) For the reasons set forth below, the Court **GRANTS, IN PART,** and **DENIES, IN PART,**

1

Scratch's Motion. FAH shall be **GRANTED** leave to file an amended complaint within **fourteen (14) days** of this Order.

I. <u>**BACKGROUND**</u>

This action arises from an allegedly unsolicited promotional fax that Scratch sent to FAH in violation of the TCPA. (Doc. No. 1 at PageID 1-2.) FAH is a veterinary clinic operating in Fairborn, Ohio. (*Id.* at PageID 4.) Scratch partners with veterinary offices and other medical providers to offer patients and pet owners financing options for those professional services. (*Id.* at PageID 5.)

Scratch acts as an intermediary between providers and prospective patients and pet owners. (*See id.*) The Complaint alleges that Scratch offers patients and pet owners financing allowing them to receive immediate care and pay Scratch in subsequent installments. (*Id.*) Additionally, Scratch connects providers with prospective patients and pet owners in exchange for a percentage of the providers' fees. (*Id.*) Scratch ultimately markets itself to providers as a simple financing solution that will help "grow revenues and reduce accounts receivable." (*Id.*)

Scratch's marketing strategy included sending promotional faxes to providers. (*Id.* at PageID 6.) FAH received one such fax from Scratch on February 20, 2019, advertising Scratch's services. (Doc. No. 1-1.) However, FAH did not welcome Scratch's promotional fax. (*See* Doc. No. 1 at PageID 10-11.) To be sure, FAH alleges that, as a rule, it does not use its fax machine to "send or receive advertising material." (*Id.* at PageID 11.) Specifically regarding Scratch's promotional fax to FAH, FAH states that it had not previously done business with Scratch, nor did FAH expressly consent to receive marketing materials from Scratch. (*Id.* at PageID 10-11.)

The advertisement included a conspicuous writing at the bottom of the page stating: "[t]o be removed from future fax communications with Scratchpay, please email

'UNSUBSCRIBE+[fax number]' to support@scratchpay.com." (Doc. No. 1-1.) FAH immediately sent Scratch a return fax requesting that FAH be removed from Scratch's fax list. (Doc. No. 7-2.) FAH does not allege that it received any additional promotional faxes from Scratch.

FAH insinuates that it was the recipient of a "bulk fax broadcast" by Scratch. (*Id.* at PageID 12.) The Complaint alleges that the header of Scratch's promotional fax indicates that the fax was sent to a potentially lengthy computerized list of veterinary offices and healthcare providers. (*Id.*) As such, FAH has pled this case as a class action, utilizing the following class definition:

> All persons and entities who were sent one or more facsimiles from Scratch Financial, Inc., on or after February 20, 2019, containing any material advertising the commercial availability or quality of Scratch's property, goods, or services, and not including the opt-out notice required by 47 U.S.C. § 227(b)(2)(D), but who did not sign-up or register to do business with Scratch.

(*Id.* at PageID 13.)

FAH filed its Complaint on February 20, 2023, exactly four years after receiving Scratch's promotional fax, seeking statutory damages under the TCPA and injunctive relief for itself and the Putative Class. (Doc. No. 1.) Scratch filed the instant Motion on May 11, 2023. (Doc. No. 7.) FAH filed its response in opposition to Scratch's Motion (the "Response") (Doc. No. 8) on June 1, 2023, and Scratch timely filed its reply (Doc. No. 9). Thus, this matter is ripe for review and decision.

## II. STANDARD OF REVIEW

### 1. Subject Matter Jurisdiction

Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally fall into one of two categories: facial attacks or factual attacks. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A facial attack questions the sufficiency of the pleading. *Id.* In reviewing a facial attack, a trial court takes the allegations in the complaint as true. *Id.* If those

allegations adequately establish jurisdiction, then the court will find that jurisdiction exists. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (internal citations omitted). In reviewing a factual attack, no presumptive truthfulness applies. *Id.*

A factual attack on subject matter jurisdiction has been commonly termed a "speaking motion." *Id.* (citing *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325). When the facts regarding subject matter jurisdiction create a factual controversy, the court must weigh the conflicting evidence to determine whether subject matter jurisdiction exists. *Id.* "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Id.* Because the issue in a factual attack is the court's jurisdiction, the reviewing court may go beyond the pleadings and "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *see also Anestis v. United States*, 749 F.3d 520, 524 (6th Cir. 2014).

However, a court will engage in this factual inquiry "only when the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim." *Gentek*, 491 F.3d at 330 (citing *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997)). If a factual attack on subject matter jurisdiction implicates the merits of the plaintiff's claim, "the district court should '*find that jurisdiction exists* and deal with the objection as a direct attack on the merits of the plaintiff's claim.'" *Id.* (internal citations omitted) (emphasis in original). This subjects the party posing a factual attack on a court's subject matter jurisdiction to the standards of Fed. R. Civ. P. 12(b)(6) and/or Fed. R. Civ. P. 56. *Id.*

The party asserting jurisdiction has the burden of proof. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015). This burden must be satisfied by a preponderance of the evidence. *Wright v. United*

4

*States*, 82 F.3d 419 (6th Cir. 1996).

### 2. Failure to State a Claim

"The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 897 (S.D. Ohio 2013) (citing *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993)). Moreover, the purpose of the motion is to test the formal sufficiency of the statement of the claim for relief. *Id.* "[F]or the purposes of a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974)).

To survive a 12(b)(6) motion to dismiss, a plaintiff must provide more than labels and conclusions; a formulaic recitation of the elements of a cause of action is not enough. *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007). The factual allegations must be enough to raise a right to relief above the speculative level and must also do something more than merely create a suspicion of a legally cognizable right. *Id.* A court is not bound to accept as true a legal conclusion couched as factual allegation or draw unwarranted factual inferences. *Id.* at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). In sum, only well-pleaded facts are construed liberally in favor of the party opposing the motion to dismiss. *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F. 3d 716, 726 (6th Cir. 1996).

### 3. Motion to Strike Class Allegations

Federal class actions must be brought in accordance with Fed. R. Civ. P. 23. *Progressive Health & Rehab Corp. v. Quinn Med., Inc.* 323 F.R.D. 242, 244 (S.D. Ohio 2017). To successfully proceed with a class action, plaintiffs must demonstrate that:

(1) the class is so numerous that joinder of all members is impracticable; (2) there

> are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* (quoting Fed. R. Civ. P. 23(a)). "Plaintiffs must also show that the class action falls into at least one of the three categories set forth by Rule 23(b)." *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011)).

There are two procedural mechanisms that a court may use to strike class allegations from a plaintiff's complaint. *See Carmouche v. A1 Diabetes Med. Supply, Inc.*, 586 F. Supp. 3d 795, 799 (W.D. Tenn. 2022). First, a court may strike class allegations from a complaint pursuant to Fed. R. Civ. P. 12(f) if the allegations concern a "'redundant, immaterial, impertinent, or scandalous matter.'" *Id.* (quoting Fed. R. Civ. P. 12(f)). Second, a party may request that the court strike class allegations from the plaintiff's complaint on the grounds that the prerequisites of Fed. R. Civ. P. 23(a) and (b) cannot possibly be satisfied. *Id.* (quoting *Schilling v. Kenton Cnty., Ky.*, No 10-143-DLB, 2011 U.S. Dist. LEXIS 8050, at *12, 2011 WL 293759, at *4 (E.D. Ky. Jan 27, 2011)) ("nothing in Rule 23 prevents a defendant from attempting to preemptively deny certification on the grounds that Rule 23(a) and (b) can never be satisfied").

Generally, "courts should exercise caution when striking class action allegations based solely on the pleadings . . . .." *Progressive Health*, 323 F.R.D. at 244-45 (internal citations and quotation marks omitted). A court's determination to strike class allegations "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (internal citations and quotation marks omitted). To this end, some courts review motions to strike class allegations taking all well-pled allegations as true and construing the allegations in the light most favorable to the plaintiff, as when reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Eldridge v. Cabela's,*

6

*Inc.*, No. 3:16-cv-536-DJH, 2017 U.S. Dist. LEXIS 160427, at *24, 2017 WL 4364205, at *7 (W.D. Ky. Sept. 28, 2017). Although, the burden of proving that Fed. R. Civ. P. 23 has been satisfied remains with the plaintiff. *Progressive Health*, 323 F.R.D. at 245 (internal citations omitted).

### III. ANALYSIS

As an initial matter, the Court notes that it must consider jurisdictional issues before addressing more substantive challenges. *Amacher v. Tennessee*, No. 3:21-cv-638, 2022 U.S. Dist. LEXIS 7567, at *5, 2022 WL 141607, at *2 (M.D. Tenn. Jan. 13, 2022) (citing *In re: 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016)). Further, "a challenge to a plaintiff's standing under Article III of the Constitution is a challenge to subject matter jurisdiction." *Id.* (quoting *Tennessee Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019)).

Therefore, for purposes of deciding the present Motion, the Court will first address the challenges to FAH's standing. The Court will then consider whether FAH has stated a claim upon which relief may be granted and whether it is appropriate to strike the class allegations of FAH's Complaint, respectively.

#### 1. Standing

Standing is a doctrine of limitation "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The doctrine defines a court's authority to hear a case and the "category of litigants empowered to maintain a lawsuit . . .." *Id.* (citing *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982); *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)).

It is well settled that to establish standing a party invoking a federal court's jurisdiction must satisfy three elements. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Accordingly,

7

such a party must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citing *Lujan*, 504 U.S. at 560-61; *Friends of the Earth, Inc. v. Laidlow Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

### i. Facial Challenge

To start, Scratch contends that FAH's complaint does not plead sufficient facts to establish standing. (Doc. No. 7 at PageID 93.) In particular, Scratch argues FAH has failed to allege any concrete and particularized injury that the company itself "actually suffered." (*Id.* at PageID 94.) In response, FAH posits that alleging its receipt of a single unsolicited fax advertisement from Scratch sufficiently demonstrates an injury in fact to survive Scratch's facial challenge here. (Doc. No. 8 at PageID 119-21.)

The Supreme Court has defined an injury in fact as an injury that is both "concrete and particularized," and "actual or imminent." *Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (internal citations and quotation marks omitted); *Valley Forge*, 454 U.S. at 472 ("... Art. III requires the party who invokes the court's authority to show that [s]he *personally* has suffered some actual or threatened injury . . ." (emphasis added)) (internal citations and quotation marks omitted). In the simplest terms, an alleged injury "must actually exist" to be considered concrete. *Spokeo*, 578 U.S. at 340.

The most easily identifiable concrete harms will involve "physical or monetary injury to the plaintiff." *TransUnion LLC v. Ramirez*, 594 U.S. ---, 141 S.Ct. 2190, 2204 (2021). Nevertheless, intangible harms may likewise be considered concrete under the right circumstances. *Id.* (citing *Spokeo*, 578 U.S. at 340-41). The Supreme Court has held that intangible harms are

8

likely concrete where they bear a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* Specifically included in these types of intangible harms are traditional injuries such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* (internal citations omitted).

By way of its constitutional lawmaking authority, Congress may create new causes of action where none previously existed. *Spokeo*, 578 U.S. at 341 (quoting *Lujan*, 504 U.S. at 578) ("Thus we said in *Lujan* that Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law'"). "Courts must afford due respect to Congress's decision" to enact a statute establishing a private cause of action. *TransUnion*, 141 S.Ct. at 2204. However, an injury will not be made concrete simply because Congress says so. *Id.* at 2205; *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018) ("We know of no circuit court decision since *Spokeo* that endorses an anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury"). For instance, a plaintiff cannot establish standing where she alleges "a bare procedural violation." *Spokeo*, 578 U.S. at 341 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). To illustrate this point in *TransUnion*, the Supreme Court offered the following hypothetical:

> Suppose first that a Maine citizen's land is polluted by a nearby factory. She sues the company, alleging that it violated a federal environmental law and damaged her property. Suppose also that a second plaintiff in Hawaii files a federal lawsuit alleging that the same company in Maine violated that same environmental law by polluting land in Maine. The violation did not personally harm the plaintiff in Hawaii.

*TransUnion*, 141 S.Ct. at 2205.

The TCPA is one such statute that establishes a cognizable right of action where one did not exist before. *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 733 (6th Cir. 2015). In essence, "the TCPA promotes an 'interest in seclusion,'" the intrusion upon which bears a close relationship

9

to harms traditionally recognized in American courts. *Id.* (quoting *Owners Ins. Co. v. Eur. Auto Works, Inc.*, 695 F.3d 814, 820 (8th Cir. 2012); *TransUnion*, 141 S.Ct. at 2204 (citing *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020)) (intrusion upon seclusion). Further, with respect to unsolicited promotional faxes, the TCPA seeks to provide a remedy for the harms – tangible and intangible – associated with such unsolicited faxes. *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 544 (6th Cir. 2014) (citing *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (8th Cir. 2013)) ("unsolicited fax advertisements impose costs on all recipients, irrespective of ownership and the cost of paper and ink, because such advertisements waste the recipients' time and impede the free flow of commerce"). As such, when a plaintiff alleges that she has received an unsolicited promotional fax, she has alleged a particularized and concrete injury under the TCPA. *Imhoff*, 792 F.3d at 631 (finding a concrete and particularized injury where named plaintiff only received two unsolicited promotional faxes).

In the current action, FAH has adequately alleged an injury in fact to establish standing. As stated above, Scratch argues that FAH's Complaint fails to allege an injury that it "actually suffered." (Doc. No. 7 at PageID 94.) However, FAH's Complaint specifically alleges that FAH itself received an unsolicited fax advertisement from Scratch which resulted in real costs and infringed upon FAH's privacy interests. (Doc. No. 1 at PageID 23.) In short, FAH has alleged a personal (i.e., particularized) injury. What's more, FAH has adequately alleged a concrete injury in this case. The Court finds that the Complaint clearly frames FAH's injury as an intrusion upon its seclusion. Per the Supreme Court, such an intrusion is a concrete intangible harm bearing a close relationship to traditional harms recognized in American courts. Therefore, FAH has sufficiently alleged an injury in fact and Scratch's facial challenge is denied.

    **ii. Factual Challenge**

The Court turns next to Scratch's factual challenge to subject matter jurisdiction. Scratch submits that FAH lacks standing to bring this action because, as a matter of fact, FAH has suffered no injury at all under the TCPA. (Doc. No. 7 at PageID 88.) To support this factual challenge, Scratch has provided the declaration of its Vice President of Sales, Neil Stanga, to demonstrate that FAH provided consent to receive Scratch's promotional fax. (Doc. No. 7-1.) Additionally, Scratch asserts that, regardless of FAH's consent, Scratch and FAH had an existing business relationship ("EBR") within the meaning of the TCPA. (Doc. No. 7 at PageID 90-93.) FAH counters, arguing that Scratch's factual challenge here is improper. (Doc. No. 8 at PageID 115.) It contends that Scratch's factual challenge attacks the merits of FAH's claim and, therefore, must be construed under Rule 12(b)(6). (*Id.*)

Courts have generally been instructed to "assume jurisdiction when statutory standing and merits questions converge." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 443-44 (6th Cir. 2006) (citing *Bell v. Hood*, 327 U.S. 678, 681-82 (1946)). As a rule, "[t]he question of subject matter jurisdiction and the merits will normally be considered intertwined where the [same] statute provides both the basis of federal court subject matter jurisdiction and the cause of action." *Id.* (quoting *Eubanks v. McCotter*, 802 F.2d 790, 793 (5th Cir. 1986)) (internal citations and quotation marks omitted). When standing and the merits of a plaintiff's claim are so intertwined, courts are encouraged to "find that jurisdiction exists and deal with the objection as a direct attack on the merits." *Gentek*, 491 F.3d at 330 (internal citations and quotation marks omitted). At the pleading stage, this requires courts to consider a party's factual challenge under Rule 12(b)(6). *Id.*

Here, the Court finds that Scratch's factual challenge relies on purported facts which are intertwined with the merits of FAH's claim under the TCPA. Consider Scratch's assertion that consent to receive the promotional fax at issue deprives FAH of standing. (Doc. No. 7 at PageID

11

88-90.) Under the junk fax provisions of the TCPA, promotional faxes must be unsolicited to violate the statute. 47 U.S.C. § 227(b)(1)(C). As a matter of common sense, an act cannot be unsolicited if it was consented to. For the Court to consider whether FAH provided consent in this case, the Court must necessarily rule on the merits of FAH's claim. The same is true with respect to Scratch's contention that Scratch and FAH had an EBR under the TCPA. EBRs constitute a statutory exception to the general rule of the TCPA's junk fax provisions. 47 U.S.C. § 227(b)(1)(C)(i). An individual has no claim under the TCPA if she had an EBR with the sender of a fax and the sender otherwise complies with the statute. The Court cannot consider whether the Parties here had an EBR without addressing the merits of FAH's claim. Therefore, the Court must consider Scratch's factual challenge here pursuant to the standards of Rule 12(b)(6)

To this end, the Court is unpersuaded by Scratch's argument. Scratch would have the Court determine that FAH consented to receiving Scratch's promotional facts and, if not, that the Parties had an EBR as set forth in the TCPA. (Doc. No. 7 at PageID 88-93.) Yet, this is directly contradictory to the allegations of the Complaint. (Doc. No. 1 at PageID 10-11.) Accepting the well-pled allegations of the Complaint as true, the Court thus disregards Scratch's contradictory allegations at the pleading stage of these proceedings. Scratch submits no arguments based on the face of the Complaint to support a finding of consent or an EBR here. Accordingly, Scratch's factual challenge to standing is denied.

### iii. Injunctive Relief

To close the page on standing, the Court must determine whether FAH possesses standing to seek injunctive relief under the TCPA. Scratch avers that FAH has failed to allege it is likely to be harmed again by Scratch's fax advertisements in the future. (Doc. No. 7 at PageID 94-95.)

FAH offers no response to this argument. Instead, FAH appears to rest on its request for injunctive relief in the Complaint. (Doc. No. 1 at PageID 25.)

A plaintiff will only have standing to request injunctive relief where she can demonstrate "continuing, present adverse effects" traceable to the conduct of a defendant. *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 109 (1998) (quoting *O'shea v. Littleton*, 414 U.S. 488, 495-96 (1974)) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects") (internal quotation marks omitted). At present, FAH has only alleged that it received a single unsolicited fax advertisement from Scratch in 2019. (Doc. No. 1 at PageID 1-2.) FAH makes no mention of a continuing harm to itself or the Putative Class. FAH does summarily state that "Plaintiff receives unsolicited advertisements on its fax machine." (*Id.* at PageID 11.) However, FAH provides no additional allegations that would allow the Court to infer any ongoing harm in violation of the TCPA by Scratch. Hence, FAH lacks standing to seek injunctive relief in this action.

  **2. <u>Failure to State a Claim</u>**

Moving on, the Court now addresses whether FAH has properly stated a claim upon which relief may be granted. Scratch argues that FAH has not pled sufficient facts to establish that it received Scratch's fax advertisement through the proper medium. (Doc. No. 7 at PageID 95.) Specifically, Scratch contends that FAH's TCPA claim fails because FAH did not receive Scratch's unsolicited fax "on a traditional standalone fax machine over a regular telephone line." (*Id.*)

FAH responds with two arguments. First, FAH argues that Scratch's Motion calls on the Court to impermissibly draw factual inferences in Scratch's favor. (Doc. No. 8 at PageID 121.)

Second, FAH disagrees with Scratch's interpretation of the TCPA to require that unsolicited promotional faxes be received on a traditional standalone fax machine. (*Id.* at PageID 122.)

To resolve this issue, courts may rely on the plain language of the TCPA. *American Copper*, 757 F.3d at 544 (citing 47 U.S.C. § 227(b)(1)(C)). The TCPA prohibits the "use [of] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C).

The key requirement of the statute is that the signal sending any unsolicited fax must be received over a telephone line. *Lyngaas v. Ag*, 992 F.3d 412, 426 (6th Cir. 2021). Such faxes include faxes received on a standalone fax machine as well as electronic faxes received via efax line or a computer so long as they are transmitted in "end-to-end communication."[1] *Id.* at 427 (internal citations and quotations marks omitted). However, emails and messages received on an online fax server will not fall within the ambit of the TCPA. *Id.* To illustrate the difference, faxes that are routed to a recipient's computer or efax folder utilize a telephone line and impose burdens on recipients that the TCPA seeks to remedy. *Id.* By contrast, messages sent via email or delivered to an online fax server originate over the internet rather than a telephone line. *Id.*

With this understanding, Scratch's argument here is unavailing. In the Complaint, FAH clearly alleges that it received Scratch's promotional fax on its "fax machine." (*See* Doc. No. 1 at PageID 11.) FAH makes no mention of a fax server or email. Although it would not be fatal, FAH also does not muddy the waters here by suggesting that it received Scratch's fax via electronic fax. Instead, a glance at the fax, attached to the Complaint, that FAH received indicates that Scratch's promotional fax was transmitted through a telephone line to a telephone number

---

[1] The Court notes that the Federal Communications Commission may promulgate developments in this area of the law. *See e.g., In the Matter of Amerifactors Fin. Grp., LLC*, 34 F.C.C.R. 11950, 11953 (F.C.C. Dec. 9, 2019). However, the FCC continues to reconsider its decision in *Amerifactors* on an application for review. Therefore, the Court will not integrate *Amerifactors* into this analysis.

presumably belonging to FAH. (Doc. No. 1-1.) Thus, drawing all inferences in the light most favorable to FAH, the Court finds that FAH has adequately stated a claim under the TCPA.

### 3. Class Allegations

Finally, the Court turns its attention to Scratch's alternative motion to strike the class allegations contained in the Complaint. As a practical matter, the Court finds that Scratch has made no assertion that FAH's class allegations contain any redundant, immaterial, impertinent, or scandalous matter. Therefore, the Court will base its determination here on whether the requirements of Rule 23 can be satisfied under the class allegations as pled.

#### i. Predominance

In the Complaint, FAH alleges in part that common questions of law or fact predominate over any individual questions amongst the Putative Class. (Doc. No. 1 at PageID 14.) Scratch argues that this cannot be. (*See* Doc. No. 7 at PageID 97.) In short, Scratch submits that questions regarding consent and potential EBRs are individualized inquiries that will necessarily predominate over questions common to the Putative Class. (*Id.* at PageID 97-100.) FAH argues that Scratch's motion to strike here relies on speculation rather than the face of the Complaint. (Doc. No. 8 at PageID 125.)

Class allegations rooted in Rule 23(b)(3) must establish, in pertinent part, that "questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Common questions must be "subject to generalized proof" such that they are applicable to the entire class. *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017) (quoting *Bridging Cmtys., Inc. v. Top Flite Fin.*, 843 F.3d 1119, 1124 (6th Cir. 2016)) (internal quotation marks omitted). "'If the same evidence will suffice for each [class] member to make prima facie showing,'" then

there is a common question. *Id.* (quoting *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016)).

To determine whether common questions predominate, courts search for "substantive issues that will control the outcome" of the case at bar. *Id.* (quoting *Gene & Gene, LLC v. BioPay, LLC*, 541 F.3d 318, 326 (5th Cir. 2008)) (internal quotation marks omitted). However, predominance does not require that every element of a claim be subject to class wide proof. *Bridging Cmtys.*, 843 F.3d at 1124 (quoting *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467-68 (2013)). Further, that a potential defense may "affect different class members differently" does not defeat allegations of predominance. *Id.* at 1125 (quoting *Young v. Nationwide Ins. Co.*, 693 F.3d 532, 544 (6th Cir. 2012) (internal quotation marks omitted). Courts have refused to entertain such speculative defenses "[e]ven where defendants point to some evidence that a defense will indeed apply to some class members." *Id.* (citing *Young*, 693 F.3d at 544; *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007); *In re HCA Holdings, Inc.*, No. 14-0511, 2015 U.S. App. LEXIS 3015, at *5, 2015 WL 10575861, at *2 (6th Cir. 2015)).

Here, the Court finds that the Complaint sufficiently alleges predominance with respect to the TCPA claim at issue. FAH clearly sets forth a conclusive list of common questions that allegedly predominate in this class action. (Doc. No. 1 at PageID 15-16.) The fact that Scratch identifies possible defenses that could affect individual members of the Putative Class differently is immaterial, particularly at this stage of the litigation. Moreover, if Scratch can later point to individualized defenses in this case, the Court can then utilize "procedural mechanisms" to prune the class. *Bridging Cmtys.*, 843 F.3d at 1126. Although, the Court will not entertain the merits of Scratch's potential individualized defenses at the pleadings stage. *See e.g., Sandusky*, 863 F.3d at

16

465 (allowing discovery before addressing issues of individualized defenses). Accordingly, the Court will not strike FAH's class allegations on this ground.[2]

### ii. Overbreadth[3]

Scratch next argues that FAH's proposed class definition is impermissibly overbroad and therefore facially uncertifiable. (Doc. No. 7 at PageID 100.) Substantively, Scratch contends that the proposed class definition will inevitably include individuals who did not receive fax advertisements on a traditional fax machine over a phone line. (*Id.*) Scratch also argues that the proposed class definition is overbroad because it will include members who consented to receive promotional faxes from Scratch. (*Id.* at PageID 100-101.)

Conversely, FAH again disagrees with Scratch's interpretation of the TCPA's junk fax provisions to require that unsolicited fax advertisements must be received on a traditional fax machine. (Doc. No. 8 at PageID 127.) FAH further argues that to include consent in the proposed class definition would run contrary to relevant case law on the subject. (*Id.*) Specifically, FAH states that including consent in the proposed class definition here would transform the Putative Class into an impermissible "fail safe" class. (*Id.*)

The Court agrees with FAH on this issue. Scratch's overbreadth arguments are largely recycled from its previous arguments made throughout the Motion, which the Court has already found to be lacking. The Court finds it unnecessary to reiterate its analyses here. Nonetheless, the Court does acknowledge that the issue of overbreadth may be raised again in this case after some factual development. At such time, the Court would reserve the authority to exclude members of

---

[2] The Court will strike FAH's allegedly common question pertaining to injunctive relief (Doc. No. 1 at PageID 16), as the Court has already found that FAH lacks standing to seek injunctive relief in this matter.

[3] In a footnote, Scratch suggests that the Putative Class definition is overbroad because it does not specify that it is limited to persons or entities in the United States. (Doc. No. 7 at PageID 101, fn. 11.) Without any additional argument, the Court finds this contention to be without merit and disregards the putative argument for purposes of this Entry and Order.

the Putative Class as needed. *Bridging Cmtys.*, 843 F.3d at 1126 ("[the Court] can place class members with potentially barred claims in a separate subclass or exclude them from the class altogether") (internal citations and quotation marks omitted).

### iii. "Fail-Safe" Class

Nevertheless, the Court does find that FAH's proposed class definition creates an impermissible fail-safe class. The Parties themselves to not substantively argue that the proposed class definition in the Complaint does or does not constitute a fail-safe class. FAH only offhandedly states that the proposed class definition is not an impermissible fail-safe class because the class is not defined solely by members who have a viable claim under the TCPA. (Doc. No. 8 at PageID 127.)

Briefly, fail-safe classes are classes that only include members who are entitled to relief. *Progressive Health*, 323 F.R.D. at 245 (quoting *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011)). This is to say, membership in the class is predicated on having a successful claim. *Id.* Such fail-safe classes are impermissible because it is impossible to ascertain who its members are until judgment is rendered. *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 U.S. Dist. LEXIS 63122, at *23, 2014 WL 1814076, at *9 (S.D. Ohio May 7, 2014).

In the context of the TCPA's junk fax provisions, the Southern District of Ohio has identified proposed class definitions that will constitute impermissible fail-safe classes. *See Swetlic Chiropractic Rehab Ctr. v. Foot Levelers, Inc.*, 235 F. Supp. 3d 882, 891 (S.D. Ohio 2017). In *Swetlic*, the court found that a proposed class definition including persons who received an unsolicited fax "which did not display a proper opt-out notice" was an impermissible fail-safe class. *Id.* Yet, at the early stages of litigation, courts have permitted plaintiffs to amend their

18

proposed class definition to remedy this issue. *Id.* (citing *Sauter*, 2014 U.S. Dist. LEXIS 63122, at *23, 2014 WL 1814076, at *9) (internal citations omitted).

In the instant Complaint, FAH has submitted a class definition that renders the Putative Class an impermissible fail-safe class. FAH's proposed class definition expressly includes parties who received an unsolicited fax "not including the opt-out notice required by 47 U.S.C. § 227(b)(2)(D)." (Doc. No. 1 at PageID 13.) The Court acknowledges that the opt-out notice requirements of the TCPA would not be wholly dispositive of the Putative Class's claims. But the issue of whether Scratch included a statutorily compliant opt-out notice on its promotional faxes is deeply enmeshed in the merits of FAH's class allegations. Therefore, the Court will strike FAH's proposed class definition as an impermissible fail-safe class. Though, at this early stage of the proceedings, the Court will afford FAH the opportunity to file an Amended Complaint consistent with this analysis.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS, IN PART,** and **DENIES, IN PART,** Defendant's Motion to Dismiss Plaintiff's Complaint or, Alternatively, to Strike Plaintiff's Class Allegations (Doc. No. 7) and finds the following:

1. FAH has sufficiently pled an injury in fact to satisfy standing in this action with respect to its claims for statutory damages.

2. FAH has stated a claim upon which relief may be granted.

3. FAH does not have standing to seek injunctive relief under the junk fax provisions of the TCPA.

4. The Court hereby **STRIKES** FAH's proposed class definition as an impermissible fail-safe class.

5. FAH shall be **GRANTED** leave to file an amended complaint within **fourteen (14) days** of this Order.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, November 14, 2023.

                                                            s/Thomas M. Rose

                                                  THOMAS M. ROSE
                                   UNITED STATES DISTRICT JUDGE